IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAVANNA SPENCER,                 )  | |
|           Plaintiff,         ) | |
|                                  ) | |
|           v.                 ) | C.A. No. 06-132 Erie |
|                                  ) | |
| C/O FIES, et al.,                ) | |
|           Defendants.         ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that Plaintiff's Motion for Summary Judgment [Document # 37] be denied.

**II.    REPORT**

**A.    Relevant Procedural History**

On June 5, 2006, Plaintiff Ravanna Spencer, an inmate formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.[1]  Named as Defendants are: Jeffrey Beard ("Beard"), Secretary of the Pennsylvania Department of Corrections ("DOC"); Marilyn Brooks, Superintendent at SCI-Albion ("Brooks"); C/O Fies, C/O Webb, C/O Hendrix, C/O Cimperman, C/O Sayers, C/O Edmonds, Lt. Eddy, and Lt. Franz, corrections officers at SCI-Albion; P/A Telaka, a physician's assistant at SCI-Albion; Dr. Patz, a psychologist at SCI-Albion, and Dr. Longstreak, a psychiatrist at SCI-Albion.[2]

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Fayette in Labelle, Pennsylvania.

[2] According to the docket entries in this case, Defendants Longstreak and Telaka have not yet filed a response to the Complaint, nor has any attorney entered an appearance on behalf of either Defendant.

Plaintiff alleges that: (I) Defendants Longstreak and Patz were responsible for placing him in a "strip cell with a blue smock and blanket" for twenty-four (24) days in November and December 2005, thus depriving him of "basic human needs" in violation of his Eighth Amendment rights, and in violation of the Americans with Disabilities Act ("ADA"); (ii) Defendants Eddy, Hendrix, Webb, Sayers, Cimperman, Edmonds, and Fies assaulted him in his cell in violation of his Fourth and Eighth Amendment rights, as well as his equal protection and due process rights under the Fourteenth Amendment; (iii) Defendant Franz intentionally denied him access to his mail while he was in the "strip cell," in violation of his due process rights under the Fourteenth Amendment; (iv) unspecified Defendants denied him access to his "religious books, material and the chance to practice [his] religion" in violation of both his First Amendment right to free exercise of religion and his rights under the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a); and (v) Defendants Beard and Brooks violated his due process rights by allowing Plaintiff to be placed in a special housing unit without following the written procedures mandated by Title 37, Section 93.10 of the Pennsylvania Administrative Code. (Document # 7, Complaint, pp. 2-9). As relief for his claims, Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages. (Id. at p. 10).

On December 28, 2006, Defendants Fies, Webb, Eddy, Hendrix, Cimperman, Sayers, Franz, Edmonds, Patz, Beard, and Brooks (collectively referred to as the "DOC Defendants") filed an Answer denying Plaintiff's allegations. [Document # 36]. Shortly thereafter, Plaintiff filed the instant motion for summary judgment, which pertains solely to his due process claim against Defendants Beard and Brooks. [Document # 37]. A response to Plaintiff's motion has been filed on behalf of the Defendants, and Plaintiff has filed a reply brief to Defendants' response. [Document ## 39, 40]. This matter is now ripe for consideration.

2

**B.     Relevant Factual History**[3]

Prior to his placement in SCI-Albion's SMU, Plaintiff had spent the majority of his prison time housed in SCI-Albion's Restrictive Housing Unit ("RHU"). (See Document # 58 at p. 2, ¶ 19). He had also received a total of 57 misconducts, 45 of which were received while he was in the RHU. (See Document # 58 at ¶¶ 13, 15). On or about December 15, 2005, SCI-Albion's Parole Review Committee ("PRC") conducted a periodic review of Plaintiff's housing status and informed Plaintiff that he was being reviewed for placement in the SMU. (See Document # 37, Exhibit B-1). According to the PRC's review decision, "[Plaintiff] state[d] he would like to go to the SMU" because he felt "it would be a better option for him." (Id.). Plaintiff was subsequently placed in SCI-Albion's SMU on or about January 11, 2006, and remained there until he was transferred to SCI-Camp Hill's SMU in or around the spring of 2006. (See Document # 48 at ¶ 5).

**C.     Standards of Review**

**1.     Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

---

[3] The factual history supporting Plaintiff's due process claim is sparse, at best. Nevertheless, this Court has attempted to glean as much information as possible from the entire record in this case, including discovery submissions and responses that have been filed by Plaintiff.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### D. Discussion

Plaintiff claims that Defendants Beard and Brooks allowed him to be placed in SCI-Albion's Special Management Unit ("SMU") without providing him with the due process allegedly required by Title 37, Section 93.10 of the Pennsylvania Administrative Code, which provides, in pertinent part:

> § 93.10.  Inmate Discipline.
>
> \*          \*          \*
>
> (b) Written procedures which conform to established principles of law for inmate discipline including the following will be maintained by the Department and disseminated to the inmate population:
>
> > (1) Written notice of charges.

5

> (2) Hearing before an impartial hearing examiner or an informal resolution process for charges specified by the Department in the Department of Corrections Inmate Handbook, or any Department document that is disseminated to inmates. The informal resolution process is described in DC-ADM 801 - Inmate Discipline. The process gives inmates the option to meet with staff to resolve a misconduct rather than proceed with a hearing.
>
> (3) Opportunity for the inmate to tell his story and to present relevant evidence.
>
> (4) Assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively.
>
> (5) Written statement of the decision and reasoning of the hearing body, based upon the preponderance of the evidence.
>
> (6) Opportunities to appeal the misconduct decision in accordance with procedures in the Department of Corrections Inmate Handbook.

37 Pa. Code § 93.10(b).

Based on the foregoing code provision, Plaintiff argues that, prior to his placement in SCI-Albion's SMU, he was not given a "due process hearing," and "there was no written notice of the charge[,] no chance to present [his] own story[,] no written determination by the fact finder[,] [and] no written reasoning...." (Document # 37 at ¶ 3). Plaintiff's reliance upon the above code section to establish his due process claim is misplaced, however, as the section merely directs the DOC to maintain and disseminate written procedures regarding inmate discipline. These procedures are set forth in DOC Policy DC-ADM 801. Moreover, the procedures contemplated by Section 93.10(b) clearly pertain to disciplinary proceedings associated with the issuance of an inmate misconduct. In this case, the decision to transfer Plaintiff to SCI-Albion's SMU was not a disciplinary action resulting from a misconduct, but, rather, resulted from a periodic review conducted by the PRC. Thus, the procedures to which Plaintiff claims to have been entitled are not applicable here.

To determine the due process to which Plaintiff may have been entitled prior to his transfer to the SMU, reference must be made to the procedures outlined in DC-ADM 801. In this regard, Plaintiff has attached to his motion for summary judgment a notice dated November 14, 2006, from Defendant Beard to "all inmates," indicating that the DOC was "re-issuing" DC-

ADM 801 to include "significant revisions." (See Document # 37, Exhibit A-1). Among the noted revisions was the following:

> Section VI.M. Disciplinary Custody Status Inmates, Subsection 12, shall now read:
>
> 12. When an inmate is being recommended for transfer to a Special Housing Unit (SMU, SSNU), the PRC shall review the recommendation with the inmate and inform him/her of the reason(s) for the transfer recommendation. The inmate will be given the opportunity to respond to the rationale given and object to his/her placement in a Special Housing Unit, if he/she so desires. The recommendation shall be documented on the DC-141, Part 4, with a copy to the inmate. The inmate may appeal the recommendation for Special Housing Unit transfer to the Facility Manager, designee and Central Office, as outlined in Subsection L.1. through 3, above.

(Id. at p. 2).

The foregoing would appear to set forth the relevant procedures that would have applied to the decision to have Plaintiff transferred to the SMU; however, Plaintiff has acknowledged, and Defendants concur, that the above revision did not take effect until December 14, 2006 - approximately eleven months **after** Plaintiff had already been transferred to the SMU. Thus, the above revision is not applicable to this case.

Apparently in recognition of this fact, Plaintiff subsequently filed with this Court a copy of the full Policy Statement for DC-ADM 801 that became effective on April 23, 2004, which Plaintiff claims to have been the policy in effect at the time of his transfer to the SMU in January 2005. (See Document # 51, pp. 1-28). This claim is debatable, however, because the December 14, 2006 revision, quoted above, purports to revise Section VI.M, Subsection 12 of DC-ADM-801, which subsection does not exist in the April 23, 2004, version of the policy submitted by Plaintiff. (See Document # 51 at pp. 17-18). Thus, it is presumed that at least one more version of DC-ADM 801 became effective between the April 23, 2004 policy and the December 14, 2006 revisions. As a result, this Court cannot assume that the April 23, 2004 policy was, in fact, the policy in effect at the time of Plaintiff's transfer to the SMU.

Nonetheless, even if this Court were to make such an assumption, the April 23, 2004 version of DC-ADM 801 provides little, if any, useful guidance regarding the procedures that

7

governed the PRC's decision to transfer Plaintiff to the SMU.  Thus, there are genuine issues of material fact as to both the policy and procedures that were in effect at the time of Plaintiff's transfer to the SMU.  Moreover, a question remains as to whether Plaintiff's documented statement that "he would like to go to the SMU" because he felt "it would be a better option for him" effectively waived any procedural rights he may have had with regard to this transfer to the SMU. (See Document # 37, Exhibit B-1).  Such genuine issues of material fact preclude the entry of summary judgment at this time.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Summary Judgment [Document # 37] be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.  See e.g., Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 8, 2007).

S/Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
Chief United States Magistrate Judge

Dated: August 24, 2007

cc:     The Honorable Sean J. McLaughlin
        United States District Judge