IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAVANNA SPENCER, )
        Plaintiff, )
)
v. ) C.A. No. 06-132 Erie
)
C/O FIES, et al., )
        Defendants. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that:

1. The Motion for Summary Judgment filed on behalf of the "DOC Defendants" [Document # 88] be granted;

2. The Motion for Summary Judgment filed on behalf of Defendant Longstreet [Document # 96] be granted; and

3. The Motion to Dismiss filed on behalf of Defendant Longstreet [Document # 97] be dismissed as moot.

### II. REPORT

#### A. Relevant Procedural History

On June 5, 2006, Plaintiff Ravanna Spencer, an inmate formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.[1] Named as Defendants are: Jeffrey Beard ("Beard"), Secretary of the Pennsylvania Department of Corrections ("DOC"); Marilyn Brooks, Superintendent at SCI-Albion ("Brooks"); C/O Fies, C/O Webb, C/O Hendrix, C/O Cimperman, C/O Sayers, C/O Edmonds, Lt. Eddy, and Lt. Franz, corrections officers at SCI-Albion; P/A Telaka, a physician's assistant at SCI-Albion; Dr. Patz, a psychologist at SCI-Albion, and Dr. Longstreak (sic), a psychiatrist at SCI-Albion.

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Waymart, Pennsylvania.

Plaintiff alleges that: (i) Defendants "Longstreak" and Patz were responsible for placing him in a "strip cell with a blue smock and blanket" for twenty-four (24) days in November and December 2005, thus depriving him of "basic human needs" in violation of his Eighth Amendment rights, and in violation of the Americans with Disabilities Act ("ADA"); (ii) Defendants Eddy, Hendrix, Webb, Sayers, Cimperman, Edmonds, and Fies assaulted him in his cell in violation of his Fourth and Eighth Amendment rights, as well as his equal protection and due process rights under the Fourteenth Amendment; (iii) Defendant Franz intentionally denied him access to his mail while he was in the "strip cell," in violation of his due process rights under the Fourteenth Amendment; (iv) unspecified Defendants denied him access to his "religious books, material and the chance to practice [his] religion" in violation of both his First Amendment right to free exercise of religion and his rights under the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a); and (v) Defendants Beard and Brooks violated his due process rights by allowing Plaintiff to be placed in a special housing unit without following the written procedures mandated by Title 37, Section 93.10 of the Pennsylvania Administrative Code. (Document # 7, Complaint, pp. 2-9). As relief for his claims, Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages. (Id. at p. 10).

Defendants Fies, Webb, Eddy, Hendrix, Cimperman, Sayers, Franz, Edmonds, Patz, Beard, and Brooks (collectively referred to as the "DOC Defendants") were served with the Complaint on or about October 30, 2006, and filed an Answer denying Plaintiff's allegations on December 28, 2006. [Document # 36]. Defendants Telaka and Longstreet were not served with the Complaint until March 26, 2007; yet, neither Defendant filed a timely response or had an attorney enter an appearance on his behalf. Consequently, at Plaintiff's request, the Clerk of Courts entered default against Defendants Telaka and Longstreet on September 10, 2007. [Document # 76]. Defendant Longstreet subsequently filed a motion to set aside default on September 25, 2007, which was ultimately granted by District Judge Sean J. McLaughlin on January 7, 2008. [Document # 92].

On December 21, 2007, the DOC Defendants filed a motion for summary judgment

seeking dismissal of Plaintiff's Complaint as a matter of law due to Plaintiff's failure to exhaust his administrative remedies. [Document # 88]. Plaintiff filed a brief in opposition to the DOC Defendants' motion on January 14, 2008. [Document # 94]. On the same date, Defendant Longstreet filed both a motion for summary judgment joining in the DOC Defendants' motion [Defendant # 96], as well as a motion to dismiss [Document # 97] to be considered in the event his motion for summary judgment is unsuccessful. Plaintiff filed a response to Defendant Longstreet's motion to dismiss on March 19, 2008. This matter is now ripe for consideration.[2]

### B. Standards of Review
#### 1. Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they

---

[2] As of the date of this Report and Recommendation, Defendant Telaka has not moved to set aside the default that was entered against him by the Clerk, nor has Plaintiff moved for the entry of default judgment against him.

are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S.  265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, ___ U.S. ___, 127 S.Ct. at 1965.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at ___, 1974.

### 2. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'"  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting

4

Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United

5

States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### C. Exhaustion
#### 1. Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

6

technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-2388 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

## 2. Procedural Default Component

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[4] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated

---

[4] There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

7

> objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

To exhaust the administrative remedies within the DOC's grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the DOC inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate. The first step in the grievance process is for the inmate to file a claim with the institution's grievance officer. The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804 VI(B)(4). If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"). DC-ADM 804 VI(C)(1).

### 3. Exhaustion and Procedural Default Applied

Defendants argue that Plaintiff has failed to exhaust his administrative remedies. In support of this argument, the DOC Defendants have submitted the Declaration of Dorina Varner, the DOC's Assistant Chief of Grievances and Appeals, who certifies that:

> 5. At the request of the Pennsylvania Office of Attorney General, I have reviewed the grievance records of inmate Ravanna Spencer, inmate number FH-6976

8

> 6. I determined that, in the period from October, 2005 through June, 2006, Plaintiff exhausted only one (1) grievance - grievance number 122168.
>
> 7. Although exhausted within the above-described time period, grievance number 122168 was actually first submitted to Initial Review on September 8, 2005.
>
> 8. Thus, it follows that inmate Spencer failed to exhaust administrative remedies with regard to any other grievance that he may have filed during this time period.

(Document # 88, Exhibit 1 at ¶¶ 5-8). Plaintiff has failed to provide any documentary evidence to contradict Ms. Varner's Declaration. Thus, it is clear from the record that Plaintiff has failed to exhaust his administrative remedies with regard to any claims other than the claims he raised in grievance number 122168, which are set forth as follows, verbatim:

> I was placed on yard restriction and shower restriction for no reason they also have me on styraphone [sic] also all I did was put my hand out the wicker what does me sticking my hand out the wicker have to do with yard shower and styraphone [sic] I am grieving Lt. Franz for putting me on shower and yard restriction and I'm grieving Lt. Eddy for the styraphone [sic] this against the law it's cruel and unusual punishment the [sic] are taking this as a game if I have to take actions for my wrongs so should they.

(Document # 88, Exhibit 2 at p. 1).

None of the claims raised in the foregoing grievance are at issue in this case.[5] Plaintiff has failed to exhaust his administrative remedies with regard to all of the claims alleged in his Complaint. Nonetheless, Plaintiff argues that he "used the grievance system at SCI Albion but did not exhaust remedies due to the lost [sic] of paper work and the other the superintendent said I didn't file timely enough." (Complaint at p. 4). Plaintiff expands on this argument in his brief in opposition to the DOC Defendants' summary judgment motion, claiming that several of his grievances were lost during his transfer from SCI-Albion to SCI-Camp Hill, including the three most relevant grievances that he filed at SCI-Albion on December 2, 2005 - Grievance Nos. 137090, 137089 and 137092. (Document # 94 at pp. 3-4; Document # 88, Exhibit 3, p. 1). This,

---

[5] Moreover, despite Ms. Varner's Declaration that Plaintiff appealed Grievance No. 122168 to final review, the final appeal was, in fact, dismissed due to Plaintiff's failure to include required documentation. (See Document # 88, Exhibit 2 at p. 13). Thus, the claims in this grievance were, in fact, procedurally defaulted.

coupled with Plaintiff's additional excuse that he didn't have any envelopes, allegedly caused him to file untimely appeals to the Superintendent, which were dismissed accordingly. However, Plaintiff's apparent attempt to argue that the grievance process was unavailable to him, thus excusing his failure to exhaust, fails in light of the record evidence before this Court.

In particular, Plaintiff attached to his Complaint copies of the denial letters he received from SCI-Albion's Superintendent with regard to the three most relevant grievances concerning the claims at issue in this case. (See Complaint, Exhibits A, B, and C). These denial letters indicate that the Initial Review Responses to two of the grievances at issue, Grievance Nos. 137089 and 137090, were dated December 12, 2005, while the Initial Review Response to the third grievance, Grievance No. 137092, was dated December 28, 2005. (Id.). In addition, the denial letters confirm that Plaintiff had 10 working days from the date of each Initial Review Response to file an appeal to the Superintendent. (Id.). Thus, with regard to Grievance Nos. 137089 and 137090, Plaintiff had until December 26, 2005 to file appeals. Plaintiff was not transferred to SCI-Camp Hill until January 11, 2006. (See "Affidavit of Truth" attached as Exhibit S-11 to Document # 95, Plaintiff's Statement of Material Facts). As a result, the time for filing appeals from the Initial Review Responses to Grievance Nos. 137089 and 137090 had expired long before the underlying grievances allegedly became "lost" as a result of the transfer.

With regard to Grievance No. 137092, to which Plaintiff received an Initial Review Response dated December 28, 2005, Plaintiff had until January 11, 2006, the date of his transfer, to file an appeal. Thus, Plaintiff appears to have had all the time he needed to submit an appeal to SCI-Albion's Superintendent before he was transferred, which would not have required an envelope. Nevertheless, Plaintiff claims that he "did not have his property for several days before transferring to SCI-Camp Hill and ... didn't receive his property until 6 days after his arrival at SCI-Camp Hill." (Document # 94 at p. 3). Plaintiff then states that the three grievances at issue were missing from his property, and that when they were found, he did not have any envelopes in which to send his appeals. (Id.). Plaintiff states further that he did not obtain envelopes until February 23, 2006, at which time he finally submitted his appeals to SCI-Albion's Superintendent. (Id.). Thus, in short, Plaintiff would have this Court excuse his failure

10

to file a timely appeal of the response to Grievance No. 137092[6] based primarily on his alleged inability to obtain envelopes until February 23, 2006, more than one month after his transfer. This the Court cannot do. Plaintiff has not alleged that he was prevented from obtaining envelopes or that his access to the mail was obstructed in any way by prison staff prior to February 23, 2006. Simply stating he did not have envelopes before then is an insufficient basis upon which exhaustion may be excused. Moreover, it is clear that the challenged events in this case occurred during the months of November and December 2005, and, thus, Plaintiff has procedurally defaulted on his claims. Accordingly, Plaintiff's claims are not properly before this Court and must be dismissed.

Because this Court is recommending dismissal of Plaintiff's claims based upon his failure to exhaust administrative remedies, there is no need to address the arguments raised in Defendant Longstreet's alternative motion to dismiss [Document # 97]. As a result, said motion should be dismissed as moot.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1. The Motion for Summary Judgment filed on behalf of the "DOC Defendants" [Document # 88] be granted;

2. The Motion for Summary Judgment filed on behalf of Defendant Longstreet [Document # 96] be granted; and

3. The Motion to Dismiss filed on behalf of Defendant Longstreet [Document # 97] be dismissed as moot.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the

---

[6] Plaintiff is, of course, asking this Court to excuse his failure to exhaust all three grievances; however, as has already been discussed, Plaintiff cannot excuse his failure to file timely appeals from the Initial Review Responses dated December 12, 2005, based upon the alleged loss of property during his transfer, because the appeals were already untimely well before the transfer.

11

date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See, e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

      /s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: April 16, 2008

cc: The Honorable Sean J. McLaughlin
United States District Judge