IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAVANNA SPENCER,              )
        Plaintiff,         )
                               )
        v.                      )    C.A. No. 06-132 Erie
                               )
C/O FIES, et al.,             )
        Defendants.        )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the motion to dismiss, or in the alternative, motion for summary judgment filed by Defendant Daniel Telega, P.A. [Document # 111] be granted, and this case dismissed.

**II.    REPORT**

    **A.    Relevant Procedural History**

On June 5, 2006, Plaintiff Ravanna Spencer, an inmate formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.[1] Originally named as Defendants were: Jeffrey Beard ("Beard"), Secretary of the Pennsylvania Department of Corrections ("DOC"); Marilyn Brooks, Superintendent at SCI-Albion ("Brooks"); C/O Fies, C/O Webb, C/O Hendrix, C/O Cimperman, C/O Sayers, C/O Edmonds, Lt. Eddy, and Lt. Franz, corrections officers at SCI-Albion; P/A Telega (incorrectly identified as "Telaka"), a physician's assistant at SCI-Albion; Dr. Patz, a psychologist at SCI-Albion, and Dr. Longstreet (incorrectly identified as "Longstreak"), a psychiatrist at SCI-Albion.

Defendants Fies, Webb, Eddy, Hendrix, Cimperman, Sayers, Franz, Edmonds, Patz,

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Fayette in LaBelle, Pennsylvania.

Beard, and Brooks (collectively referred to as the "DOC Defendants") were served with the Complaint on or about October 30, 2006, and filed an Answer denying Plaintiff's allegations on December 28, 2006. [Document # 36]. However, neither Defendant Telega nor Defendant Longstreet filed a response to Plaintiff's Complaint, or had an attorney enter an appearance on their behalf, even though returns of service were filed with the Clerk indicating that each had been served with the Complaint on March 26, 2007. [Document ## 60, 61]. Consequently, at Plaintiff's request, the Clerk of Courts entered default against Defendants Telega and Longstreet on September 10, 2007. [Document # 76]. Defendant Longstreet subsequently filed a motion to set aside default on September 25, 2007, stating that he had not been personally served with Plaintiff's Complaint, but, instead, a return of service had been executed on his behalf, without his knowledge or authorization, by Melinda Adams ("Adams"), Deputy Superintendent at SCI-Albion.[Document # 78]. This motion was ultimately granted by District Judge Sean J. McLaughlin on January 7, 2008, and the entry of default against Defendant Longstreet was set aside. [Document # 92].

On December 21, 2007, the DOC Defendants filed a motion for summary judgment seeking dismissal of Plaintiff's Complaint as a matter of law due to Plaintiff's failure to exhaust his administrative remedies. [Document # 88]. Defendant Longstreet subsequently filed a motion for summary judgment joining in the DOC Defendants' motion [Defendant # 96].

On April 16, 2008, this Court issued a Report and Recommendation recommending that summary judgment be granted in favor of the DOC Defendants and Defendant Longstreet.[2] [Document # 105]. This recommendation was subsequently adopted by District Judge Sean J. McLaughlin, by Memorandum Order dated May 30, 2008, and judgment was entered in favor of the DOC Defendants and Defendant Longstreet. [Document # 109]. As a result, the only Defendant remaining in this case is Defendant Telega.

On April 24, 2008, Plaintiff filed a motion for default judgment against Defendant

---

[2] As of the date of the Report and Recommendation, Defendant Telega had not moved to set aside the default that was entered against him by the Clerk, nor had Plaintiff moved for the entry of default judgment against him.

Telega, based upon his failure to file any response to the Complaint. [Document # 106]. On June 11, 2008, Defendant Telega filed a motion to dismiss Plaintiff's claims against him, arguing that Plaintiff failed to exhaust his administrative remedies. [Document # 111]. By Order of this Court entered the same date, Defendant Telega's motion to dismiss was held in abeyance and he was directed to file a response to Plaintiff's motion for entry of default judgment. Accordingly, Defendant Telega filed a motion to set aside default on June 18, 2008, indicating that he had never been personally served with the Complaint but, like Defendant Longstreet, a return of service was executed by Adams on his behalf, without his knowledge or authorization. [Document # 117]. This motion was ultimately granted by Order of District Judge Sean J. McLaughlin, dated October 14, 2008, and Plaintiff's motion for entry of default judgment against Defendant Telega was denied. Thereafter, Plaintiff was ordered to file a response to Defendant Telega's motion to dismiss by November 26, 2008 [Document # 123]; however, no response has since been filed by Plaintiff. This matter is now ripe for consideration.

### B. Standards of Review
#### 1. Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id., 127 S.Ct. at 1973 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court

3

must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id., 127 S.Ct. at 1974.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

**C. Exhaustion**

**1. Exhaustion Requirement of the Prison Litigation Reform Act** The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3]   The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-2388 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

5

not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

### 2. Procedural Default Component

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[4] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

To exhaust the administrative remedies within the DOC's grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the

---

[4] There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

6

DOC inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate. The first step in the grievance process is for the inmate to file a claim with the institution's grievance officer. The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804 VI(B)(4). If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"). DC-ADM 804 VI(C)(1).

### 3. **Exhaustion and Procedural Default Applied**

Plaintiff's only claim against Defendant Telega is that he allegedly denied Plaintiff medical attention while Plaintiff was in a psychiatric observation cell during the months of November and December 2005. Telega argues that this claim should be dismissed because Plaintiff failed to exhaust his administrative remedies. In support of this argument, Defendant Telega relies upon the Declaration of Dorina Varner, the DOC's Assistant Chief of Grievances and Appeals, which was previously submitted by the DOC Defendants in connection with their motion for summary judgment. [Document # 88, Exhibit 1]. In her Declaration, Ms. Varner certifies that:

> 5. At the request of the Pennsylvania Office of Attorney General, I have reviewed the grievance records of inmate Ravanna Spencer, inmate number FH-6976
>
> 6. I determined that, in the period from October, 2005 through June, 2006, Plaintiff exhausted only one (1) grievance - grievance number 122168.
>
> 7. Although exhausted within the above-described time period, grievance number 122168 was actually first submitted to Initial Review on September 8, 2005.
>
> 8. Thus, it follows that inmate Spencer failed to exhaust

7

> administrative remedies with regard to any other grievance that he may have filed during this time period.

(Document # 88, Exhibit 1 at ¶¶ 5-8). In addition, Defendant Telega points out that he was not named in any of Plaintiff's grievances that were filed during the relevant time period. (Document # 112, Defendant Telega's brief, citing Exhibits 2, 5, 6 and 7 attached to Document # 88). Since Plaintiff has not provided any contradictory evidence, it is clear from the record that Plaintiff has failed to exhaust his administrative remedies with regard to any claims other than the claims he raised in grievance number 122168, which are set forth as follows, verbatim:

> I was placed on yard restriction and shower restriction for no reason they also have me on styraphone [sic] also all I did was put my hand out the wicker what does me sticking my hand out the wicker have to do with yard shower and styraphone [sic] I am grieving Lt. Franz for putting me on shower and yard restriction and I'm grieving Lt. Eddy for the styraphone [sic] this against the law it's cruel and unusual punishment the [sic] are taking this as a game if I have to take actions for my wrongs so should they.

(Document # 88, Exhibit 2 at p. 1).[5]

Obviously, the claims raised in the foregoing grievance fail to implicate any wrongdoing on the part of Defendant Telega. Thus, Plaintiff has failed to exhaust his administrative remedies with regard to his claim against Defendant Telega. In addition, since the challenged events in this case occurred during the months of November and December 2005, Plaintiff has procedurally defaulted on his claim. Accordingly, Plaintiff's claim against Defendant Telega is not properly before this Court and must be dismissed.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss, or in the alternative, motion for summary judgment filed by Defendant Daniel Telega, P.A.

---

[5] This Court previously rejected Plaintiff's argument that he did not exhaust his administrative remedies due to lost paperwork, which he raised in his prior response to the DOC Defendants' motion for summary judgment. (See Document # 105, Report and Recommendation, at pp. 10-11).

[Document # 111] be granted, and this case should be dismissed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See, e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: December 22, 2008

cc:    The Honorable Sean J. McLaughlin
United States District Judge